```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
                                         :
JERRY N. POLLIO,                         :
                                         :      08 Civ. 6858 (JSR)
            Plaintiff,                   :
                                         :      OPINION AND ORDER
       -v-                               :
                                         :
MF GLOBAL, LTD., KEVIN R. DAVIS, and     :
J. RANDY MACDONALD,                      :
                                         :
            Defendants.                  :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Jerry N. Pollio brings this securities class action on behalf of himself and other individuals who purchased stock in defendant MF Global Ltd. ("MF Global" or "the Company") between March 17, 2008 and June 20, 2008 ("the Class Period"). In his Complaint for Violation of the Securities Laws ("the "Complaint"), plaintiff alleges that MF Global, together with its individual officers, defendants Kevin R. Davis and J. Randy MacDonald, made a series of false and misleading statements regarding MF Global's financial condition that caused MF Global's stock to trade at artificially inflated prices during the Class Period in violation of the Securities Exchange Act of 1934. On September 19, 2008, defendants moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to allege fraud with the specificity required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). After reviewing the parties' briefs and hearing oral argument, the Court, by Order dated December 29, 2008, granted defendant's motion

and dismissed the Complaint with prejudice.  This Opinion and Order explains the reasons for that determination and directs the entry of final judgment.

The gist of the Complaint - - the allegations of which the Court accepts as true for purposes of assessing the defendants' motion - - is the claim that defendants issued a series of false and misleading statements "regarding the Company's capital and financial results," and "concealed the material deterioration in the Company's business and the insufficiency of its capital."  Complaint ("Compl.") ¶ 3.  In support of this claim, the Complaint quotes verbatim and at length from a series of statements made by defendants during the Class Period.[1]  The first of these statements, namely, a March 17, 2008 press release, acknowledged "significant concerns across the markets," but also noted that MF Global's client funds were "at a higher level" than before and that the Company was "very well

---

[1] For purposes of defendants' motion to dismiss, the Court considers not only the allegations on the face of the Complaint but also such documents as are incorporated by reference in the Complaint or were necessarily relied upon by plaintiff in bringing this action.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  It bears noting, however, that in opposing defendants' motion, plaintiff relies extensively on facts and documents that are not referenced or even alluded to in the Complaint.  "[P]arties cannot amend their pleadings through issues raised solely in their briefs," Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005), and such facts are thus irrelevant for purposes of determining whether plaintiff's Complaint should be dismissed for failure to state a claim and/or failure to plead fraud with the requisite specificity.  However, as discussed below, the Court fully takes these facts into account for the different purpose of determining whether plaintiff should be granted leave to amend his Complaint.

capitalized with $1.4 billion in a committed, undrawn credit facility." Id. ¶ 21; Declaration of David B. Anders, Esq. ("Anders Decl.") Ex. C. Two days later, the Company reiterated that it had a strong liquidity position, stated that rumors to the contrary were "without merit," and again cited to its $1.4 billion undrawn credit facility. Compl. ¶ 22; Anders Decl. Ex. F.

On April 18, 2008, MF Global announced preliminary results for its 2008 fiscal year fourth quarter, noting, inter alia, that its volumes and revenues exceeded levels set in the previous three quarters, that it was "experiencing net client asset inflows," and that the Company was "performing well." Compl. ¶ 24; Anders Decl. Ex. G. These results were confirmed in a May 20, 2008 press release. Compl. ¶ 25; Anders Decl. Ex. H. During an earnings call held on that same day, defendant Davis, who was MF Global's CEO, stated that the Company was "in new and robust health" and that "[a]ssuming exchange volumes to stay in their current levels and we maintain our current credit rating, we feel very comfortable of achieving 15 to 20% net revenue growth in fiscal year 2009." Compl. ¶¶ 26-27; Anders Decl. Ex. I at 8. Davis also once again rebutted the "vicious and false rumors" concerning the Company's liquidity, and noted that he believed that "MF Global is more liquid today than at any time in its history." Anders Decl. Ex. I at 3-4.

The May 20, 2008 press release also announced that MF Global had "received a $300 million backstop commitment" from an affiliate of J.C. Flowers & Co. LLC toward the sale of equity-linked,

3

convertible preferred securities.  Compl. ¶ 25, Anders Decl. Ex. H. In connection with that commitment, MF Global stated that J.C. Flowers would purchase a minimum of $150 million and a maximum of $300 million of these securities, that the proceeds of this sale would be used to repay a portion of a $1.4 million bridge loan, and that the transaction "allowed our existing shareholders to participate in our future success" and would provide "our stakeholders certainty around our capital structure."  Id.  The release also noted that the investment "represents a tremendous vote of confidence in the strength of MF Global's diversified business model," and "strongly positions MF Global for future growth."  Id. The release further described how each preferred share issued in this arrangement would be convertible at any time into common stock, at the price of $12.50 per share, dividends were to be cumulative at the rate of 6% annually, and the Company could require conversion after five years if the market price of common shares exceeds 125% of the conversion price.  Id.  During the May 20 earnings call, Davis stated that the $300 million equity commitment would be used to strengthen MF Global's capital structure, that although the Company had more than $600 million in excess capital it still had between $800 and $900 million in financing needs, and that the Company "has faced some of the most difficult market conditions in decades together with some never before seen challenges."  Compl. ¶ 27; Anders Decl. Ex. I at 2.

　　　On June 17, 2008, MF Global announced that in order to help repay the bridge loan, it would "offer approximately $150 million of non-cumulative perpetual convertible preference shares" and "$150

4

million of convertible senior notes . . . in two private offerings." Compl. ¶ 29; Anders Decl. Ex. J.  The June 17 press release also estimated that revenue for fiscal first quarter 2009 would range from $360 to $390 million, explaining that "the narrowing of short term credit spreads had a negative impact on net interest income and overall pre-tax margins in the first quarter," and that there would be "increased non-compensation costs in the current quarter as a result of ongoing changes to its business information, risk management and monitoring systems and corresponding increases in professional fees."  Id.

A June 19, 2008 Wall Street Journal article discussed MF Global's June 17 announcement and indicated that the $300 million offering could have impacted MF Global's stock price.  Compl. ¶ 30; Anders Decl. Ex. K.  On June 20, 2008, the last day of the Class Period, MF Global priced the $300 million offering, with the preferred shares being convertible at $10.45 per share, dividends being paid at 9.75% on a non-cumulative basis, and the Company being able to require conversion after 10 years if the market price of common shares exceeded 250% of the conversion price.  Compl. ¶ 31.

After devoting twelve lengthy paragraphs and nearly ten pages to recounting these various statements, the Complaint then proceeds to allege, in one paragraph, that defendants knew, but failed to disclose, that MF Global's business was "weaker than represented," that MF Global "would not be able to achieve the 15%-20% revenue growth projected for fiscal 2009," and that "MF Global's capital

5

would not be sufficient absent additional infusions which would dilute the ownership of current shareholders." Compl. ¶ 33.[2]

Such allegations fall pitifully short of the pleading requirements here applicable. It is well-established that pursuant to Fed. R. Civ. P. 9(b), a plaintiff alleging fraud must state with particularity "in what respects the statements at issue were false." San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir. 1996). Likewise, under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); see Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 184 (S.D.N.Y. 2006) (to withstand a motion to dismiss, the complaint must "provide enough information to give defendants notice of the 'specific statements or sets of statements believed to be materially false and misleading'") (citation omitted).

Here, as noted, although plaintiff's Complaint quotes verbatim from a series of press releases and other statements allegedly made by defendants during the Class Period, it fails to identify which portions of these statements (if any) were false or

---

[2] Paragraph 10 of the Complaint contains identical language.

6

misleading.[3]  On this basis alone, plaintiff's Complaint must be dismissed, because it fails to "afford defendant[s] fair notice of the plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

In a similar vein, the Complaint also fails to allege with any specificity the reason or reasons why any of defendants' statements were false or misleading.  In Rombach v. Chang, for instance, plaintiff's complaint catalogued a series of press releases issued by defendant and then alleged that "various statements made therein were misleading because they failed to disclose or accurately represent the company's integration and liquidity problems."  355 F.3d 164, 172 (2d Cir. 2004).  The Second Circuit affirmed the district court's dismissal of the complaint pursuant to Rule 9(b), holding that "nothing in the complaint explains with adequate specificity how those statements were actually false or misleading." Id. at 172.  Similarly, here plaintiff alleges, in a conclusory fashion, that all of the statements recounted in the Complaint were misleading because they failed to disclose that MF Global's business was "weaker than represented" and that the Company had insufficient capital.  Compl. ¶ 33.  This sole paragraph, out of a 50-paragraph, 19-page Complaint, falls woefully short of satisfying the PSLRA's requirement that plaintiff identify the reasons why each allegedly actionable statement is misleading.  See In re IAC/InterActiveCorp

---

[3] Plaintiff's counsel conceded as much at oral argument, in noting that the Complaint was neither "very clear," nor "well articulated."  12/3/08 transcript at 4.

7

Secs. Litig., 478 F. Supp. 2d 574, 591 (S.D.N.Y. 2007) ("It is not enough . . . for plaintiffs to merely allege that defendants withheld negative information from the market"). Dismissal is thus warranted on this ground as well.

Moreover, separate and apart from the lack of specificity of plaintiff's allegations, the vast majority of defendants' alleged statements are not in any way actionable under the securities laws.

First, many of the statements identified in the Complaint relate to MF Global's past performance, including numerous statements regarding the Company's client level fund, credit facility, liquidity position, 2008 fiscal fourth quarter results, and the amount of its excess capital. It is well-established, however, that "[d]efendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy." In re Nokia Corp. Sec. Litig., 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006). Indeed, "[a]s logic dictates, 'disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.'" Id. (internal citations and quotations omitted); see In re IAC Secs. Litig., 478 F. Supp. 2d at 594 (statements that merely "cite historical facts . . . are not actionable under the securities laws"). Accordingly, defendants here cannot be held liable for any such statements concerning MF Global's historical performance.

Second, a good number of statements identified in the Complaint merely amount to optimistic statements concerning MF Global's then-current or future performance. See, e.g., Compl. ¶ 24

8

("we are extremely pleased that our volumes and revenues have remained strong;" "our customers continue to seek MF Global's services;" "the franchise is performing well"); id. ¶ 25 ("I firmly believe we have emerged as a stronger company than ever before;" "We believe [the J.C. Flowers] transaction will provide our stakeholders certainty around our capital structure"); id. ¶ 27 ("business is in new and robust health"). Such "generalized expressions of puffery and optimism," however, "are not actionable under the securities laws." Leykin v. AT&T Corp., 423 F. Supp. 2d 229, 247 (S.D.N.Y. 2006) (holding that no liability attaches to the statement "[t]he first quarter will be by far the low-water mark for our financial performance in 2001"); In re Duane Reade Inc. Sec. Litig., 02 Civ. 6478, 2003 U.S. Dist. LEXIS 21319, at *5 (S.D.N.Y. Nov. 24, 2003) (no liability for statement that "we have a positive outlook and remain confident in our ability to achieve our sales and earnings targets . . . [and] we anticipate achieving sales of approximately $355 million"). Indeed, issuers of securities "are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." Shields v. Citytrust Bancorp., 25 F.3d 1124, 1129-30 (2d Cir. 1994). As such, plaintiff's Complaint must be dismissed in this respect as well.

Third, certain additional statements identified in the Complaint are protected by the PSLRA's safe harbor for forward-looking statements, which provides that such statements are not

9

actionable if, <u>inter</u> <u>alia</u>, a plaintiff fails to establish that the individual who made or approved the statements had "actual knowledge" of their falsity. 15 U.S.C. § 78u-5(c)(1). Here, plaintiff has failed to make allegations raising an inference of such knowledge. <u>In re Aegon N.V. Sec. Litig.</u>, 03 Civ. 603, 2004 U.S. Dist. LEXIS 11466, at *33-34 (S.D.N.Y. June 23, 2004). Accordingly, to the extent that plaintiff seeks to recover for alleged misstatements/omissions relating to MF Global's future revenues, including earnings projections set forth in the April 18, 2008 press release and the May 20, 2008 quarterly earnings call, Compl. ¶¶ 24, 26, plaintiff's Complaint must again be dismissed.

<u>Fourth</u>, as to all the statements, plaintiff's allegations fall far short of satisfying the PSLRA's requirement that securities fraud complaints "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," here scienter (<u>i.e.</u> actual knowledge of falsity or reckless disregard of the truth, coupled with fraudulent intent). 15 U.S.C. § 78u-4(b)(2). Such an inference "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, __, 127 S. Ct. 2499, 2504-05 (2007); <u>see</u> <u>Chill v. Gen. Elec. Co.</u>, 101 F.3d 262, 267 (2d Cir. 1996) (in order to withstand dismissal on the pleadings, a complaint alleging securities fraud under Rule 10b-5 must plead "facts that give rise to a <u>strong inference of fraudulent intent</u>") (citation omitted) (emphasis in original). Where, as here, a plaintiff relies

10

on a theory of "conscious misbehavior or recklessness" to prove scienter, the complaint must allege "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  In re Carter-Wallace, Inc. Secs. Litig., 220 F.3d 36, 39 (2d Cir. 2000).  Although such an inquiry is fact specific, "[s]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements."  Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000).  In any event, the appropriate inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Tellabs, 127 S. Ct. at 2509 (emphasis in original).

   Here, plaintiff's Complaint fails to identify a single document, communication, report, or piece of information received by or in the possession of any defendant that indicates that MF Global's business condition, liquidity, or capital structure was in any way different or weaker than what was disclosed to the market.  Although plaintiff baldly alleges that defendants "knew" but failed to disclose certain general "true facts," Compl. ¶ 33, the Complaint is entirely bereft of any facts to support such allegations.  Accordingly, without any facts to support even a weak (let alone strong) inference of fraudulent intent, the Complaint also must be

11

dismissed for failure to adequately plead scienter. See Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 618 (S.D.N.Y. 2008) ("Plaintiffs' generic, conclusory statement that fraudulent intent existed is simply not enough to meet the heightened pleading standards for securities fraud cases"); In re Duke Energy Corp. Sec. Litig., 283 F. Supp. 2d 158, 160 (S.D.N.Y. 2003) ("While the Court must take as true all well-pleaded facts, conclusory allegations must be disregarded").[4]

It is thus patent that, for numerous independently sufficient reasons, the Complaint must be dismissed. The only question that remains is whether plaintiff should be granted leave to file an amended Complaint. While such leave is often granted, here there are so many gaping holes in the Complaint that one might wonder how they could possibly be filled. But the Court need not speculate in that respect, because plaintiff's brief volunteered numerous facts and documents not mentioned or even alluded to in the Complaint that plaintiff claimed would support the Complaint, and plaintiff's counsel effectively made clear that it was these additional allegations that plaintiff would rely upon to try to

---

[4] Plaintiff seeks to impose control person liability against Davis and MacDonald under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t. See Compl. ¶¶ 43-44 (Count II). Because, as noted, plaintiff has failed to adequately plead a primary violation of the Exchange Act or any particularized facts raising a "strong inference" that these defendants possessed the requisite scienter, however, plaintiff's Section 20(a) claim likewise must be dismissed as to all defendants. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007).

12

salvage his claims.  <u>See</u> 12/3/08 transcript.  But these further allegations do not remotely suffice to save the plaintiff's suit.

Specifically, plaintiff first points to Davis's statement during the May 20, 2008 earnings call that MF Global was "more liquid . . . than at any time in its history," arguing that this statement somehow falsely gave investors a mistaken impression concerning the Company's liquidity.  Plaintiff does not dispute the accuracy of the statement itself, see 12/3/08 transcript at 8, but instead argues that MF Global's subsequent offering of $150 million in convertible senior notes somehow supports an inference that defendant was in a precarious liquidity position.  A Court cannot evaluate alleged misleading statements in a vacuum, however, but instead "in light of the circumstances under which they were made."  17 C.F.R. § 240.10b-5.  Here, it is undisputed that MF Global had $1.4 billion in a committed, undrawn credit facility (thus dwarfing any purported significance of the $150 million senior notes offering, <u>cf.</u> <u>Eca & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d 187, 204-05 (2d Cir. 2009)), and, in any event, Davis opined on MF Global's liquidity only after disclosing the maximum amount of the Company's pending liquidity needs.  These facts, together with plaintiff's own concession that defendants did not misrepresent the Company's liquidity as compared to past quarters, demonstrate that no reasonable investor could have been led to believe that MF Global's liquidity was anything other than as represented by defendants.[5]

---

[5] Similarly, although plaintiff takes issue with defendants' repeated denial of "vicious and false rumors" concerning the Company's liquidity, nonetheless, defendants' statements did not

13

Accordingly, any amendment seeking to bolster plaintiff's allegations in this respect would be futile.

In a similar vein, plaintiff points to defendants' statement that MF Global was "very well capitalized with $1.4 billion in a committed, undrawn credit facility," but has failed to demonstrate with any specificity how this statement was false or misleading.[6] As worded, this statement concerning MF Global's capitalization is expressly based on the Company's committed undrawn credit facility, the existence of which plaintiff does not dispute. In context, no reasonable investor could interpret such a statement to be based on any other fact (disclosed or otherwise), thus preventing plaintiff from pleading any additional facts to demonstrate that this statement somehow misled MF Global's investors.

Plaintiff further seeks to amend the Complaint to demonstrate the falsity of MF Global's May 20, 2008 projection of "15 to 20% net revenue growth in fiscal year 2009," arguing that such guidance was made without a legitimate basis, and noting that less than a month later, the Company announced that its net revenues for First Quarter 2009 declined by 16% to 22%. MF Global's revenues for First Quarter 2009, however, bear little (if any) relevance to the question of

---

specify what "rumors" were being refuted, plaintiff has failed to identify what a reasonable investor would have understood such rumors to be, and, as noted, plaintiff has been unable to demonstrate how, in any way, defendants' statements concerning MF Global's liquidity were false or misleading.

[6] Indeed, plaintiff's counsel conceded at oral argument that this statement was not "patently false." 12/3/08 transcript at 13.

whether or not the Company would meet its guidance for the fiscal year 2009, which would not end for another eight months. Indeed, it strains credulity to suggest that a company's first quarter revenues can somehow render that company's full-year guidance fraudulent. Plaintiff argues that defendants' revenue projections were fraudulent because these projections were "linked" to interest rate spreads that were negatively impacting the Company, but fails to articulate how a subsequent decline in interest rates (a decline that was outside of defendants' control and that impacted all publicly-traded companies) bears any relevance to the truthfulness of such projections. In any event, during the May 20 earnings call, Davis emphasized that there was "[c]ontinued uncertainty over the direction of interest rates" which "generated continued volatility and heighten[ed] levels of market activity," and expressly warned that MF Global's revenue projections were based on an assumption that exchange volumes would remain at their current levels and that the Company would maintain its current credit rating. Anders Decl. Ex. I at 3, 8. Because such cautionary language expressly warned of the "risk[s] that [allegedly] brought about plaintiff['s] loss," no reasonable investor could have been misled by defendants' projections, thus further demonstrating the futility of any amendment to plaintiff's Complaint. Halperin v. Ebankers USA.com, Inc., 295 F.3d 352, 359 (2d Cir. 2002).[7]

---

[7] Plaintiff points to a pair of analyst reports that purport to call into question the accuracy of defendants' revenue projections and the adequacy of defendants' assessment of MF Global's interest rate exposure. Although in certain circumstances analyst statements can have an impact on market prices, see In re Salomon Analyst Metromedia Litig., 544 F.3d 474 (2d Cir. 2008), plaintiff has failed to demonstrate how such

15

Nor has plaintiff pointed to any specific facts that could salvage his otherwise failed attempt to allege scienter with the requisite specificity.  Specifically, although plaintiff contends that MF Global's offering of $150 million in senior notes "clearly . . . did not happen overnight," thus somehow demonstrating that defendants concealed that offering from the public, this "bare assertion[], without any further facts or details, [does] not adequately demonstrate defendants' knowledge of facts or access to information contradicting their public statement[s]."  Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006).  Indeed, given the then-current economic situation, and in light of MF Global's acknowledgment that it was weathering "the storm-of-the-century," Anders Decl. Ex. I at 3, 8, any inference that can be drawn from the 28-day period between the last allegedly false statement and the offering is far from "clear."  Such conclusory allegations of scienter are insufficient to cure the fundamental deficiencies in plaintiff's Complaint.  See Chill, 101 F.3d at 267.  Likewise, plaintiff has failed to point to any specific facts supporting a strong inference that defendants were aware of any issue regarding interest rate spreads, knew that MF Global's fiscal year 2009

---

statements are in any way relevant (or admissible) to demonstrate the truthfulness (or lack thereof) of an issuer's statement.  See Hershfang v. Citicorp., 767 F. Supp. 1251, 1255 (S.D.N.Y. 1991) ("analysts' opinions are neither relevant to this complaint nor admissible, and, even if the analysts' assumptions are true, that can not reasonably lead to an inference that defendants made intentional or reckless misrepresentations to the public") (internal quotation marks omitted).

projections were inaccurate over 8 months before the year's end, were aware of any alleged "liquidity crunch," or otherwise knowingly concealed any other fact.

In sum, the speculative, conclusory allegations in plaintiff's Complaint provide no particularized basis for relief under the securities laws, and plaintiff has failed to demonstrate that any amendment could cure the Complaint's fundamental failure to adequately plead the existence of materially false statements or of scienter. Defendants cannot, in such circumstances, be held liable for their unsurprising inability to have "greater clairvoyance" about facts and circumstances that did not come about, if at all, until after defendants' alleged statements were made. Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.).

Accordingly, for all of the foregoing reasons, the Court reaffirms its prior order dismissing plaintiff's Complaint with prejudice, and directs the Clerk of the Court to enter final judgment.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       April 7, 2009